## WHITE v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 75.   Argued November 11, 12, 1903.—Decided December 21, 1903.

Retrospective legislation is not favored.  Unless the intention that a law is to have a retrospective operation is clearly evidenced in the law and its purposes the court will presume that it was enacted for the future and not for the past.

The provisions of the Navy Personnel Act of March 3, 1899, 30 Stat. 1004, as to crediting officers appointed from civil life with five years' service on the date of appointment for the purpose of computing their pay apply to the pay of officers theretofore appointed from the commencement of the then next fiscal year, when the act by its terms went into operation, and such provisions do not apply to readjusting compensation for any period prior thereto, thereby giving increased pay to officers who had reached maximum pay before the passage of the act.

THE case is stated in the opinion.

*Mr. George A. King* and *Mr. William B. King* for appellant:

The clause relied on in sec. 13, act of March 3, 1899, is the second clause of the third proviso, to the effect that all officers, including warrant officers, who have been or may be appointed to the Navy from civil life, be credited for computing their pay, with five years' service.  The natural meaning of the words is that the officer shall be treated as if he had been appointed five years before his actual appointment.  For effects produced by length of service in the Navy, see *Hawkins* v. *United States,* 19 C. Cl. 618.  As to rules for interpretation of a statute of this nature, see *Jaeger* v. *United States,* 27 C. Cl. 278; *Dewey* v. *United States,* 178 U. S. 510.  It should be interpreted literally and the words given their natural meaning.  *Sturges* v. *Crowninshield,* 4 Wheat. 122, 202; *Bate Refrigerating Co.* v. *Sulzberger,* 157 U. S. 36; *Hadden* v. *Collector,* 5 Wall. 107; *McCluskey* v. *Cromwell,* 11 N. Y. 593, 601.  There are precedents for appellant's contention in decisions affecting the statute of March 3, 1883, 22 Stat. 473; *Hawkins*

v. *United States,* 19 C. Cl. 611; *United States* v. *Rockwell,* 120 U. S. 60; *United States* v. *Green,* 138 U. S. 293; *United States* v. *Dunn,* 120 U. S. 250; *United States* v. *Hendee,* 124 U. S. 309; *Brown* v. *United States,* 32 C. Cl. 379; *United States* v. *Mullan,* 123 U. S. 186 (involving act of July 15, 1870, 16 Stat. 330); *United States* v. *Baker,* 125 U. S. 646; *Jordan* v. *United States,* 19 C. Cl. 621, in which amounts were allowed to officers for previous services varying from $4.17 to $13,879. As to system of longevity pay, see *Thornley* v. *United States,* 18 C. Cl. 117. As to the rule against retroactive legislation, Black on Interpretation of Laws, p. 256; *Ex parte Buckley,* 53 Alabama, 42; Cooley's Const. Lim. 369; Sedgwick on Statutes and Constitutional Law, 161; *Society &c.* v. *Wheeler,* 2 Gall. 139; *Hine* v. *Pomeroy,* 39 Vermont, 211; *Stoddard* v. *Smith,* 5 Binney, 355; *Bolton* v. *Jones,* 5 Barr, 145. In the present instance no vested rights are destroyed, no new penalties, forfeitures or disabilities are imposed.

The granting of a gratuity by Congress is not of so extraordinary a character that all presumptions must be against it. The giving of gratuities to persons for present or past military and naval service is a common feature of Congressional legislation. For instance the act of July 19, 1848, § 5, 9 Stat. at L., 248, granted extra pay to the volunteers of the Mexican War, itself a gratuity. It was not granted to the Regular Army. *United States* v. *Merrill,* 9 Wall. 614. Thirty years later Congress passed an act by which the officers of the Regular Army who served in that war were entitled to extra pay. *Emory* v. *United States,* 19 C. Cl. 254; *United States* v. *Emory,* 112 U. S. 610. See also 20 Stat. 265, 470, providing for pensions.

The additional bounty granted by the act of July 28, 1866, §§ 12, 13, 14 Stat. at L., 32, was a pure gratuity of thousands of dollars from a depleted treasury. The credit to naval officers for volunteer service was a gratuity under the act of March 3, 1883, 22 Stat. at L., 473. See also *United States* v. *Bowen,* 100 U. S. 508; *Adams* v. *United States,* 20 C. Cl. 116.

These grants were made because in the judgment of Congress

justice to soldiers of the Civil War demanded it, although its cost was millions.

It is for Congress to decide what grants shall be made from the public treasury, and the responsibility rests with Congress and not with the courts. In *United States* v. *Realty Co.*, 163 U. S. 441, a prospective sugar bounty law was directly held unconstitutional; in *United States ex rel. Miles Company* v. *Carlisle*, 5 D. C. App. 138, the same question was raised and seriously considered but not decided in *Field* v. *Clark*, 143 U. S. 695, as well as in *United States* v. *Realty Co.* itself, in which case it was held that the retrospective bounty was valid, although a gratuity, because it was for the payment of accrued moral obligations of the United States.

A proviso carves special exceptions only out of the enacting clause. *United States* v. *Dickson*, 15 Pet. 165. As to other provisos, see *Georgia Banking Co.* v. *Smith*, 128 U. S. 174; *Hadden* v. *Collector*, 5 Wall. 110; act of July 2, 1864, § 3, 13 Stat. at L. 351; *United States* v. *Ewing*, 140 U. S. 142.

The decision of this case rests upon the plain meaning of the words under discussion. The fundamental error of the Court of Claims is that after seeing the result of this meaning, it resorted to considerations outside the words used to modify this natural meaning. Appellants insist:

That all exterior presumptions are inadmissible, the language of the act being plain.

That the presumption against retroactive legislation does not apply to laws not affecting vested rights.

That there can be no presumption against a grant of back pay to officers or men in the military service.

That the date in the opening clause cannot be brought into the clause under discussion because:

This is the kind of proviso described in *Georgia Banking Co.* v. *Smith*, 128 U. S. 181, a piece of independent legislation; this clause relates to a different class of persons; to credit and not to pay; it already contains a date fixing the time of its predicate verb. The preceding and subsequent clauses of the same pro-

viso not being interpreted as requiring this date, the date cannot be capriciously selected for this clause.

That the clause can be read harmoniously with the act of March 3, 1883, only when read like that act, retrospectively.

*Mr. Assistant Attorney General Pradt* for the United States. *Mr. Special Attorney John Q. Thompson* was on the brief.

MR. JUSTICE DAY delivered the opinion of the court.

This is an appeal from the judgment of the Court of Claims dismissing the petition of the claimant. Upon hearing, that court made the following findings of fact, 37 C. Clms. 365:

"I. The claimant, Ulysses S. G. White, was on the 9th day of January, in the year 1877, appointed a civil engineer in the Navy from civil life. He remained such civil engineer and was such at the time of the passage of the Navy Personnel Act of March 3, 1899.

"II. The claimant, by reason of service in the Army, amounting to six years, seven months and twenty-one days, previous to his entry into the Navy, reached the maximum pay of his grade, $3500, May 19, 1885, under Revised Statutes, sections 1478, 1556. Thus the amount of pay received by him between the 9th of January, 1877, and the 19th of May, 1885, was as follows:

Three years and 130 days, at $2700 per annum.... $ 9061 64
Five years, at $3000 per annum..................   15,000 00
    Total.....................................  $24,061 64

"If he were, upon the date of his appointment, credited for computing his pay with five years' service, and entitled to be paid from that date, he would receive pay at the following rates:

Three years and 130 days, at $3000 per annum.... $10,068 49
Five years, at $3500 per annum..................   17,500 00
    Total ....................................  $27,568 49

or $3506.85 more than he has previously received."

The claim arises under the act of March 3, 1899, commonly

known as the Navy Personnel Act. The act is entitled "Chapter 413. An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States." 30 Stat. 1004. Section thirteen of the act provides:

"That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: *Provided,* That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this Act: *Provided further,* That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places: *Provided further,* That naval chaplains, who do not possess relative rank, shall have the rank of lieutenant in the Navy; and that all officers, including warrant officers, who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years' service. And all provisions of law authorizing the distribution among captors of the whole or any portion of the proceeds of vessels, or any property hereafter captured, condemned as prize, or providing for the payment of bounty for the sinking or destruction of vessels of the enemy hereafter occurring in time of war, are hereby repealed: *And provided further,* That no provision of this Act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pay according to existing law: *And provided further,* That nothing in this Act shall operate to increase or reduce the pay of any officer now on the retired list of the Navy."

The part of the statute particularly under consideration in

this case, and upon the interpretation of which the right of the claimant depends, is contained in the third paragraph: "And that all officers, who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years' service."

It is the contention of the claimant that he comes within the terms of this proviso, and, as an officer appointed to the Navy from civil life, is entitled, as of the date of his appointment, to be credited with five years' service, having been appointed January 1, 1887, and by previous service in the Army entitled, under another statute, 22 Stat. 472, c. 97, to a credit of six years, seven months and twenty-one days, reaching the maximum pay of $3500 on May 19, 1885.

The reading of the statute is not altogether clear, and we are to arrive at the meaning of Congress by such aids as may be legitimately resorted to in order to determine the effect and purpose of the lawmaking power in the language used. The statute is part of a voluminous act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States. In the title, the language used looks to the future; it contemplates a readjustment of rank and pay. It is true that the title of the act may not control the plain language of the enacting clauses, but nevertheless we may look to the declared scope and purpose of the act as evidenced by its title whenever it becomes necessary, in view of the use of language, incapable by itself of exact construction. *Holy Trinity Church* v. *United States,* 143 U. S. 457, 465.

Chief Justice Marshall, in *United States* v. *Fisher*, 2 Cranch, 358, 386, said:

"Where the intent is plain, nothing is left to construction. Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case, the title claims a degree of notice, and will have its due share of consideration." *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 550, 563; *Holy Trinity Church* v. *United States,* 143 U. S. 457, 462.

The part of the statute relied upon by the claimant is incorporated by means of a proviso. Through the diligence of the learned counsel representing the claimant, it is exhibited in the appendix to their brief, that in this statute as originally reported, section 16 of the Navy Personnel Act (H. R. 10,403, 53d Congress, third session,) there was no such proviso. As reported in the Senate, January 1, 1899, the first proviso was added. The other provisos were added as the bill was reported to the Senate, February 2, 1899, and included the one now under consideration; and it is argued that not only does this proviso contain independent matter, but that it was introduced into the bill and intended to be enacted as such. It is undoubtedly true that in Congressional legislation provisos have been included in statutes which are really independent pieces of legislation, but this is a misuse of the usual purpose and effect of a proviso, which is to make exception from the enacting clause, to restrain generality and to prevent misinterpretation. *Minis* v. *United States*, 15 Pet. 423. If possible, the act is to be given such construction as will permit both the enacting clause and the proviso to stand and be construed together with a view to carry into effect the whole purpose of the law. 1 Kent, 463. The purview of the act and the words of the proviso must be reconciled if may be, and the operation of the proviso may be limited by the scope of the enacting clause. The object of interpretation being to ascertain the purpose of the lawmakers as expressed in the terms used in the law, we have a right to look to other laws upon the same subject matter, and to consider the purpose intended to be carried into effect by the operation of the new law considered with the old and as a part of a general provision. It is true that if the language used is free from ambiguity it is the best evidence of the thing intended, and it is the duty of the courts to find, if possible, within the four corners of the act, and from the language used, the scope and meaning of the law. *Lake County* v. *Rollins*, 130 U. S. 662, 671. It is equally true that it is the business of courts to decide what the law is,

and not by consideration, or surmises as to the policy of the Government have the effect to adjudge that to be law which has not been so enacted by the legislature. *Dewey* v. *United States*, 178 U. S. 510, 521. But, after all, the main purpose of interpretation is to ascertain and carry into effect the object and purpose of the legislature in making the given law as expressed in the language used. Where it is claimed that a law is to have a retrospective operation, such must be clearly the intention, evidenced in the law and its purposes, or the court will presume that the lawmaking power is acting for the future only and not for the past; that it is enacting a rule of conduct which shall control the future rights and dealings of men, rather than review and affix new obligations to that which has been done in the past. While it is undoubtedly within the power of Congress to provide for bounties or gratuities to those in the naval or military service of the United States, we should hardly look for such legislation in an act having the declared purpose and scope of the one now under consideration. Retrospective legislation is not favored. Cooley on Constitutional Limitations, 529. Retrospective laws which have been sustained in the courts have ordinarily had the effect to remedy irregularities in legal procedure, assessment of property for taxation, and the like. Cooley on Const. Lim. 530, 531.

But it is urged that the plain meaning of this statute includes officers in the situation of the claimant and requires a readjustment of their pay for years past. The language used is "all officers that have been or may be appointed to the Navy from civil life," and it is claimed that unless this construction is given to the act, violence is done to its terms, and to the rights intended to be conferred upon the claimant and other officers similarly situated. The proviso directs credit on the date of appointment. It is argued that this means as of the date of appointment. If this be true, it is in conflict with the first clause of the act, which makes increased pay begin on June thirtieth. The effect of this construction of the proviso when read with the first clause of the act is thus perti-

nently pointed out in the majority opinion of the Court of Claims:

"The subject matter of the proviso in question pertains to the rank of chaplains and to the basis for computing the pay of 'all officers, including warrant officers, who have been or may be appointed to the Navy from civil life;' and the purview or body of the section refers to the pay of 'commissioned officers of the line of the Navy and of the Medical and Pay Corps,' many of whom—nearly all from the Medical Corps—were appointed from civil life, while the chaplains, the majority of the professors of mathematics, nearly all the civil engineers, and other officers were appointed from civil life.

"So that the language of the proviso, 'all officers . . . who have been or may be appointed to the Navy from civil life,' clearly includes those officers mentioned in the body of the section who were appointed from civil life.

"If, therefore, the claimant's contention should prevail, those officers so appointed whose pay was increased after June 30, 1899, by assimilation to Army pay, would, in addition thereto, be entitled to receive from the date of appointment a gratuity of five years' additional pay, thereby fixing in the same section two distinct dates for the beginning of the pay of the same officers."

But quite as important, in our view, is the declared purpose for which the credit is to be given "computing their pay." Does it not do violence to this expression of purpose to give the law a retrospective effect? The purpose for which the five years' service is to be credited cannot be ignored. It is thus that the object of the act is to be accomplished, and it is not declared to be with a view of readjusting the pay of officers within the classes named, or giving to them, as Congress might, a gratuity for past services, but the credit is solely given for the purpose of "computing their pay," and this is to be read in the light of the purview of the statute wherein its operation is declared to be effective from the beginning of the coming fiscal year.

But it is said that the declared policy of the act includes not only those to be hereafter appointed, but also those who have been appointed to the Navy from civil life. It will be presumed that Congress, in passing this legislation, had in mind the law already in force regulating the subject, and we find in section 1556, Rev. Stat. 267, that civil engineers in the Navy are to be paid according to the length of their service, with increase of pay through three periods of five years each, and after fifteen years of service they are to receive the maximum amount of pay. If the act under consideration is to be read, as we think it should be, to have reference to the pay of naval officers beginning with the next fiscal year " on and after June thirtieth," it would increase the pay of those who had not reached the maximum pay by continuous service by giving to such officers, for the purpose of computing their pay thereafter, a credit for the five years' service or so much thereof as would enable such officer to reach the maximum pay. This construction gives force to the declared purpose of the act to begin its operation at the beginning of the coming fiscal year and benefits those officers named in the proviso who have not already, by continuous service, been advanced in pay to the maximum compensation fixed by law. Congress must be presumed to have had before it in framing this legislation the statute already in force, fixing the pay of naval officers by advancing them every five years through three such periods to maximum pay. It enacted, in the statute under consideration, that the officers named, appointed or to be appointed from civil life, should have such credit on the date of appointment for one purpose—"computing their pay." In the light of the operation of the act as declared in the first clause to begin on the 30th of June following, we think this was meant, so far as it applied to officers theretofore appointed, and who were not receiving maximum pay, to give them a credit of the term of five years' advancement toward full pay for the purpose of computing compensation after the beginning of the coming fiscal year.

While the question is not free from difficulty, we cannot escape the conclusion that had Congress intended that this credit should be given not only for the purpose of computing future pay, but with a view to readjusting past compensation, and giving gratuities for years past, it would have declared its purpose in more distinct terms.

The construction here given is consistent with the declared purpose of the act; it gives to the law a future, not a retrospective operation, and, in our judgment, carries out the expressed purpose of Congress in passing the law.

*Judgment of the Court of Claims affirmed.*