### UNITED STATES v. SOMERS.

(District Court, S. D. California, S. D. August 31, 1908.)

No. 39.

POST OFFICE—MAILING NONMAILABLE MATTER—INDICTMENT—"THING."

An indictment under Rev. St. § 3893, as amended by Act July 12, 1876, c. 186, 19 Stat. 90, and Act Sept. 26, 1888, c. 1039, 25 Stat. 496 (U. S. Comp. St. 1901, p. 2658), for mailing a letter giving information where and how and of whom and by what means articles and things designed and intended for the procuring of an abortion might be obtained, states an offense, where it sets out a letter written to defendant inquiring for some medicine or other means for accomplishing such result, and a letter, alleged to have been mailed by defendant in reply, which, when read in connection with the letter of inquiry, in effect offers for a stated consideration to effect the desired result by some treatment or operation, although the particular means is not specified; the word "thing," as used in the statute, being a comprehensive term, which includes any kind of treatment or operation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 70.

For other definitions, see Words and Phrases, vol. 8, p. 6957.]

## On Demurrer to Indictment.

The indictment alleges that the defendant on the 17th day of February, 1908, received a letter, of which the following is a copy, viz.:

"Escondido, Cal., Feb. 19, 1908.

"Dr. George C. Somers, Los Angeles, Cal.—Dear Doctor: I noticed your ad. in the Times, and think you can be of assistance to us, or rather my wife, in a professional way. She is about six weeks along in the family way, but she is determined not to have a baby. Have you any kind of medicine or something we can use here at home by directions you give, and which will keep her from having a baby? How much will it cost sent to me by express? If not, will she have to go to Los Angeles for some kind of operation? Have you some private place where she could stay while getting well? What will your charges likely be in that case? Please advise soon what is best to do.

"Confidentially yours,                    [Signed] Wm. A. Bender."

The indictment further alleges that said defendant, in response to said letter hereinabove set forth, did deposit in a United States post office a certain letter giving information directly and indirectly as to how, when, where, of whom, and by what means certain divers articles and things designed and intended for the procuring of abortion (a particular description of which said articles and things is to the grand jurors unknown) might be obtained, which said letter is as follows:

"2/18—08.

"Mr. Wm. A. Bender, Escondido, Cal.—Dear Sir: Yours of the 15th inst. received and contents noted. In reply I will state that I can do nothing for

your wife unless she comes to Los Angeles. There is no medicine that I know of that will bring about the results you desire. She would have to remain here a week or ten days. The expense would be forty to sixty dollars, not more. Such accommodations as she would need can be had. In some cases results can be gotten in twenty-four to forty-eight hours; in others, three or four days might be required.

"Yours respectfully,                                     Geo. C. Somers."

Oscar Lawler, U. S. Atty., and A. I. McCormick, Asst. U. S. Atty.

W. J. Hunsaker, for defendant.

WELLBORN, District Judge (after stating the facts as above). First. The indictment is not defective because of its failure to specify the articles or things about which defendant's letter is alleged to have given information. In this respect the allegations here are the same as in Lee v. United States, 156 Fed. 948, 84 C. C. A. 448, where, as appears from those unreported parts of the record in the Court of Appeals which were used by the government at the oral argument on this demurrer, the precise point was raised by demurrer and urged by plaintiff in error in his brief. Among other grounds of demurrer were the following:

"(5) That said indictment does not state facts sufficient to constitute the offense of giving information to the person therein named, or to any person, where and how, and of whom, and by what means divers articles and things designed and intended to prevent conception might be obtained, for said written letter does not contain any statement referring to any article or thing designed or intended to prevent conception or for the procuring of abortion. * * *"

"(7) That said indictment is uncertain, in this: That it states that said written letter, alleged to have been deposited by the defendant in the post office establishment of the United States, gave information where and how, and of whom, and by what means divers articles and things designed and intended for the prevention of conception or for the procuring of abortion might be obtained, but it fails to state what articles or things for such purpose might be obtained; and said alleged offenses are not charged with precision and certainty, in not showing what the articles or things were, or how or in what manner the same were to be used, nor does it allege that the defendant intended the same to be used for either of the purposes alleged.

"(8) The said indictment is ambiguous, in this: That it fails to state what articles or things were to be furnished or used, or the manner of their use, in order to accomplish either the prevention of conception or the procuring of abortion."

In support of the ground of demurrer set forth in the last two paragraphs, the brief says:

"Now there is nothing at all designated in this letter, nor in the indictment, to show what the articles or things were or what they were intended for."

Said case must be accepted as authoritative here, and it is not, therefore, necessary for me to review United States v. Pupke (D. C.) 133 Fed. 243, or the decisions of any other District Courts.

Second. The ruling in United States v. Whittier, 28 Fed. Cas. 591 (No. 16,688), that the statute against mailing obscene books, etc., does not extend to the case of a letter written by the defendant to a person who had no existence, in answer to a decoy letter of a detective, and

which, on its face, gives no information of the prohibited character, has been disapproved by the Supreme Court in Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550, and hence, if said facts were shown here by the indictment, which I hardly think is the case, still the indictment would not, on that ground, be bad.

Third. That part of the statute (section 3893, Rev. St. [U. S. Comp. St. 1901, p. 2658]) which prohibits mailing of any letter giving information concerning articles or things designed or intended to procure abortion is not limited to physical substances capable of transmission through the mail, but includes treatments and operations, indeed, everything, whether material or ideal, designed or intended for the purpose above stated. I have examined the original act to which counsel for defendant invited attention, namely, Act March 3, 1873, c. 258, 17 Stat. 599, and think that statute rather confirms than militates against the views which I have expressed. It will be observed that in the first section of the act the words employed are "any drug or medicine or article whatever," while in the second section of the act the corresponding words used are "any article or thing." Obviously the word "thing" was added in section 2 to broaden its scope. The Century Dictionary in one clause defines the word "article" thus:

"6. A material thing: as, part of a class, or, absolutely, a particular substance or commodity; as, an article of merchandise. * * *"

It was doubtless in this sense that the word "article" was used in the first and second sections. The word "thing" is defined by the Century Dictionary thus:

"That which is or may become the object of thought; that which has existence, or is conceived or imagined as having existence; any object, substance, attribute, idea, fact, circumstance, event, etc. A thing may be material or ideal, animate or inanimate, actual, possible, or imaginary."

Thus it will be seen that the word "thing" has a far wider significance than the word "article," and there could have been but one purpose for adding it in the second section, and that was, as I have already indicated, to broaden the scope of the section.

It is true that the title of the act, which is "An act for the suppression and prevention of the circulation of obscene literature and articles of immoral use," does not indicate the objects of the second section with the same fullness as it does those of the first section; but it is only in case of ambiguity that the title of an act may be resorted to in aid of its interpretation, and, moreover, the title can never be used to extend or restrain or control positive provisions or express words in the statute. Holy Trinity Church v. U. S., 143 U. S. 457, 462, 463, 12 Sup. Ct. 511, 36 L. Ed. 226; White v. U. S., 191 U. S. 545, 550, 24 Sup. Ct. 171, 48 L. Ed. 295. See, also, 26 Amer. & Eng. Ency. of Law, p. 2629.

The language of the section as it now stands in the Revised Statutes, so far as pertinent here, is:

"Every obscene * * * book, * * * and every article or thing designed or intended for the * * * procuring of abortion, and every * * * letter * * * giving information directly or indirectly where or how or of whom or by what means any of the hereinbefore mentioned matters, articles

or things may be obtained, * * * are hereby declared to be nonmailable matter," etc.

While the letter charged to have been written by the defendant states that he knows of no medicine that will bring about an abortion, yet, when read in connection with the letter of inquiry to which it was a reply, it does in effect inform the addressee that the defendant has at his command in Los Angeles some sort of means for the procuring of an abortion, although the means are not specified. It may be fairly conceded, however, that the means referred to were, as contended by defendant's counsel at the oral argument, and using the language of the letter of inquiry, "some kind of operation." The Century Dictionary, in one clause, defines "operation" thus:

"The course of action or series of acts by which some result is accomplished; process. (a) In surg., the act or series of acts and manipulations performed upon a patient's body, as in setting a bone, amputating a limb, extracting a tooth, etc."

Manifestly an "operation" is a "thing" within the accepted definitions of the two words, and there is no peculiar phraseology in the statute which restricts the ordinary signification of the word "things." The participle of the verb phrase "may be obtained" is not limited in its use to the acquisition of material substances, but is coextensive with the word "things," and can be suitably used to designate the attainment of whatever one may desire. "Obtain" is defined, in one clause, by the Century Dictionary, as follows:

"I. trans. 1. To get; procure, secure, acquire; gain; as to obtain a month's leave of absence; to obtain riches.

"II. intrans. 1. To secure what one desires or strives for; prevail; succeed."

The word "procure," embraced in the definitions of "obtain," is defined by same authority thus:

"2. To bring about by care and pains; effect; contrive and effect; induce; cause; as, he procured a law to be passed."

"Treatment," which has been held by the Circuit Court of Appeals for this circuit to be within the statute (Lee v. United States, supra), is defined in the Century Dictionary thus:

"The act or the manner of treating in any sense."

The verb "treat" is defined by the same authority, in one paragraph, thus:

"7. To manage in the application of remedies; as to treat a·fever or a patient."

In view of said decision, and the various definitions above given, I am satisfied that an "operation" is a "thing" within the letter, as it admittedly is within the spirit, of the statute.

The demurrer will be overruled