In re TONAWANDA IRON & STEEL CO.

(District Court, W. D. New York. February 29, 1916.)

No. 998.

1. SEAMEN ⬅29(2)—INJURY—LIABILITY OF VESSEL.
    Liability of a vessel for injury to a seaman depends either upon the unseaworthiness of the ship or her failure to supply and keep in order proper appliances.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188; Dec. Dig. ⬅29(2); Master and Servant, Cent. Dig. § 211.]

2. SEAMEN ⬅29(2)—LIABILITY OF VESSEL FOR INJURY—UNSEAWORTHINESS.
    Vessel owners are not bound to provide the best, safest, and most convenient appliances, and a failure to do so does not render the vessel unseaworthy.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188; Dec. Dig. ⬅29(2); Master and Servant, Cent. Dig. § 211.]

3. SEAMEN ⊚⟶29(3)—LIABILITY FOR INJURY—NEGLIGENCE OF FELLOW SERVANTS.

That the insufficient lighting of the part of the deck where a seaman was required to work caused or contributed to his injury does not render the ship liable, where proper lanterns and lamps were supplied, and the failure to have them lighted and in place was due to negligence of some member of the crew, who was a fellow servant of the seaman injured.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188; Dec. Dig. ⊚⟶29(3); Master and Servant, Cent. Dig. § 492.]

4. SEAMEN ⊚⟶4—SUIT FOR INJURIES—CONSTRUCTION OF STATUTE.

The provision of Seamen's Act March 4, 1915, c. 153, § 20, 38 Stat. 1185, that, "in any suit" to recover for injury to a seaman, "seamen having command shall not be held to be fellow servants with those under their authority," is not retroactive, and does not apply to suits commenced before it went into effect.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. ⊚⟶4.]

In Admiralty. Petition of the Tonawanda Iron & Steel Company, as owner of the steamer Oceanica, for limitation of liability. On claim of John Moran for injury as seaman. Claim disallowed.

Dempsey, Tuttle & Rice, of Niagara Falls, N. Y. (S. Wallace Dempsey, of Lockport, N.Y., of counsel), for claimant.

Brown, Ely & Richards, of Buffalo, N. Y., for petitioner.

HAZEL, District Judge. On the night of November 2, 1913, in St. Mary's river, while the steamer Oceanica, with tow, was bound from Duluth to North Tonawanda, the claimant, John Moran, a deckhand, stood by the tow chock in the stern of the vessel preparatory to handling the tow line for tying the steamer up to the dock for the night. When the steamer was checked down the barge came ahead on the tow line, causing it to slack and slide to the right of the tow chock. The tow line running from the barge through the tow chock was fastened to timber heads on the steamer after passing over a sliding block positioned in the tow chock, which was about 7 feet wide and 18 inches high. Moran testified that he was ordered to take in the slack of the line and trice it along the rail; that while complying with such order he looked down on the deck to avoid stepping on ropes thrown there, when a sudden pull on the tow line caused it to come against one of the uprights of the chock, catching and crushing his hand, making necessary the amputation of three fingers.

In this proceeding for limitation of liability it is claimed that the steamer Oceanica should be held responsible for the accident, on the ground that as the place where the accident occurred, and where it was necessary for claimant to stand, was insufficiently lighted and littered with ropes, there was a complete failure on the part of the vessel to furnish a reasonably safe place in which to work.

[1] It is unnecessary to examine the many authorities cited in the briefs, for I conceive that the law of the case is clearly and definitely set forth by the Supreme Court of the United States in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, where it is expressly held that liability of a vessel for injuries received by a seaman depends ei-

ther upon the unseaworthiness of the ship or upon her failure to supply and "keep in order the proper appliances appurtenant" thereto; that the crew, except perhaps the master, are as between themselves fellow servants; that seamen receiving injuries because of the negligence of a fellow servant can recover only for maintenance and cure; and that indemnity for the negligence of the master and crew is not allowable. No claim is made in this case for maintenance and cure.

[2] 1. There is no evidence to support the view that the vessel was unseaworthy, though it was contended that the tow chock at the stern was faultily constructed, in that the tow line was permitted to have undue play, and that the injuries were partially attributable thereto; but I think the construction of the tow chock and the manner of rigging the tow line were proper and seaworthy. Tow chocks of the kind on the Oceanica were common in ships of her class and construction, and indeed towing chocks allowing good play of line were regarded as convenient and proper appliances; but, even if such were not the case, no negligence for failure to provide more modern appliances is attributable to the vessel, as it has often been decided that owners are not obliged to provide the best, safest, and most convenient appliances. The Santa Clara (D. C.) 206 Fed. 179.

[3] 2. It is claimed that there was but a single oil lantern aft, which hung from the center of the ceiling and gave insufficient light; that on each corner of the cabin there was a place for a lamp, but that there were no lamps at such places at the time of the accident, and claimant could not see the tow chock or the sliding movements of the tow line. Even assuming that all the lamps were not in place, and that the deck was dimly lighted (although the second mate testified that both lanterns at the corners of the cabin were lighted and in place, in addition to the lantern suspended from the ceiling, and that the lighting was sufficient), liability on the part of the vessel is not proven, in view of the fact that the lamp room aboard the ship contained lanterns and lamps for adequate lighting which were supplied by the owner for use. The owner discharged its full duty to the crew when it supplied proper and suitable equipment for doing the work with reasonable safety, and as lamps had been supplied they should have been lighted and used when required. Madigan v. Oceanic Steam Nav. Co., Ltd., 178 N. Y. 242, 70 N. E. 785, 102 Am. St. Rep. 495; The Osceola, supra. Assuming, therefore, that the proximate cause of the injuries sustained by claimant was the insufficient lighting of the stern deck of the vessel, it must then be held on this record that the mishap was due to the negligence of fellow servants or a fellow servant, either the master or mate, for which the ship was not responsible. The City of Alexandria (D. C.) 17 Fed. 390; Cornell Steamboat Co. v. Fallon, 179 Fed. 293, 102 C. C. A. 345; Benson v. Goodwin, 147 Mass. 238, 17 N. E. 517.

3. So, also, as to littering the deck with rope. The owners of the vessel having furnished the rope necessary for purposes of navigation, it was, of course, the duty of the officers to keep it in a proper place, and not to allow it to litter the deck and render it unsafe for work, to the injury of seamen there employed; but their failure to perform their duty in this respect does not constitute negligence which is attributable to the ship or her owner.

[4] The maritime law at the time of the accident was in its application essentially different from the common and statutory law dealing with injuries to servants arising from the negligence of the master or of fellow servants, and the adjudications already cited herein point out such differences with clearness and understanding. But it is contended that section 20 of the Seamen's Act, so called, passed by Congress on March 4, 1915 (38 Stat. 1185, c. 153), radically changed the existing maritime law as to the liability of the ship to seamen, in that it abolished the fellow servant doctrine by expressly providing:

"That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority."

Was such act retroactive? By section 18 it is provided that the act shall take effect as to all vessels of the United States eight months after its passage; i. e., on November 4, 1915. The injuries in question were sustained November 2, 1913, and this proceeding was begun in January, 1915. Proctor for claimant urges that the language of section 20, referring to "any suit" and "any injury sustained," is broad enough to include the claim for injuries under discussion. But with this I do not agree. Had it been the intention of Congress that section 20 should be effective prior to other provisions of the act, or that it should apply to actions pending or to causes of action already in existence, explicit words would have no doubt been used to express such intention. Upon reading sections 18 and 20 together, it seems to me that they are clearly of a prospective character. The ordinary presumption is that legislation provides for the future and that there is no retrospective intention, and both federal and state courts are slow to incorporate words into a statute which will permit such an interpretation. White v. U. S., 191 U. S. 545, 24 Sup. Ct. 171, 48 L. Ed. 295.

In Winfree v. Northern Pacific Railway Co., 227 U. S. 296, 33 Sup. Ct. 273, 57 L. Ed. 518, the Supreme Court had before it the Employers' Liability Act of 1908 (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), which it was argued was retroactive. That act substantially declared that in all actions subsequently brought against any common carrier contributory negligence should not be a bar, etc. While the reference to future actions was perhaps somewhat more definite than in section 20 of the Seamen's Act, standing alone, I nevertheless think the principle enunciated in that case is applicable to the present situation. It was there contended, as it is here, that the statute was merely remedial, and should be construed to apply to all suits, whether already begun or not; but the Supreme Court said:

"While there are exceptions, especially in the case of remedial statutes, the general rule is that statutes are addressed to the future and not to the past; and, in the absence of explicit words to that effect statutes are not retroactive in their application. The Employers' Liability Act of 1908 introduced a new policy, and radically changed existing law, and will not be construed as a remedial statute having retrospective effect."

So, also, in the case at bar the Seamen's Act made a substantive change in the maritime law of the land creating a new liability—not

simply changing methods of procedure or rules of evidence or affecting the statute of limitation—and making the ship or her owner answerable for the negligence of the officers charged with the responsibility of her navigation, as a result of which a seaman sustains injuries. Such change in an existing law does not concern the remedy merely, but, as said in the Winfree Case, supra:

"It, however, takes away material defenses, defenses which did something more than resist the remedy; they disproved the right of action."

For the foregoing reasons I am constrained to hold that Congress did not declare in the Seamen's Act an intention that the act should operate retrospectively, that the claimant is without right of action against the steamer Oceanica, and, further, that his claim not being for maintenance or cure must be disallowed.